Here he, here he, this Honorable Appellate Court of the 2nd Judicial District is now open. The Honorable Susan F. Hutchinson, presiding. Please be seated. Your Honors, the first case from the dock this morning, 2-22-0255, Thomas B. Lys and Francisca B. Lys. Plaintiffs' Appellants, v. Village of Mettawa and Illinois Municipal Corporation, Chicago Title Interest, then Trust No. 113128, B. J. Sessions, 288, and W. W. Granger, Incorporated and Illinois Corporation Defendants Appellees. Arguing on behalf of the Appellants, Mr. James R. Carr. Arguing on behalf of the Appellees, Chicago Title Interest and W. W. Granger, Mr. Ronald F. Cook. Arguing on behalf of the Appellees, Village of Mettawa, Mr. Howard C. Jablecki. All right, I understand that we do have an arrangement today about splitting some time for the Appellee, and that's fine. And with that, if Mr. Carr, you're ready to proceed, you may do so. Good morning. Good morning. I'm Jim Carr. I'm here today with my friend and colleague, Charlie Marino. Together, we have the honor of appearing before this Court on behalf of the Plaintiffs, Thomas Lys and Francisca Lys. Tom is here with us today. He's seated at Council's table. May it please the Court and Council. The development features that matter the most to the Plaintiffs with respect to the further development of the Granger property are the following. How many buildings will there be? How tall will they be? How large will they be? Where will they be located within the Granger property? How close to the property line will they be? How will they be illuminated? What will their appearance be? How large will the parking lots be? How will the buildings be screened, if at all? How many parking spaces? Where will the spaces be located? Where will the parking lots be illuminated and how close to the property line and so forth? After two ZPA committee or commission hearings before the Village Zoning Body, these questions still remain unanswered today. But as I remember the record, I hope, Granger had indicated that they were not presenting anything new and they had no plans for development currently. That currently is an issue, I suppose, but there were no plans currently. That's correct. There is no dispute about that. There was several instances throughout the record where Granger's representatives testified that they had no further plans for development at this time. And in fact, it's going to be a little difficult to develop some of that property because it's dedicated wetland or parkland or it's not developable, basically. Apparently, some parts of the property were undeveloped. Other parts of the property were reserved as a preserved woodland area and so forth. And some of it also was already developed. But the point is that the hearing that took place had to do with the zoning entitlements that were sought by Granger for the existing development. They had constructed a five or six-story office building in the 1990s. I think it was finished by 2000. It was basically to reaffirm what was already on the books, so to speak, correct? Yes, that was what was represented in the application. So, each and any future plans would still have to go through traditional zoning procedures? That's correct. So, where is the due process violation? The due process violation is in the approval of these variances or variations for the further development, which are set forth in sections four through eight of the challenged ordinance. They approve variances for not just the existing development, but for the further development of the property. I think with respect to the height, that was the primary objection. Well, height as well as the square footage of office space. Bulk zoning. Well, right. Just to basically set parameters or an outline of what would be approvable in the future, right? I'm sorry. What might be subject to approval in the future? Well, is that the question to me? Yeah. Well, what could be approvable in the future would be plans for the further development of the property. There may be additional buildings. We don't know how many. We don't know where they would be located on the property, how tall they would be, how they would be illuminated and so forth. But your clients or any other homeowners and property owners would have the ability to be present for any approval process, correct? That's correct, except that this ordinance. Again, let's go back to my question. Where is the due process violation? The due process violation is in Section 3B of the ordinance because that section provides that there will be no hearing with respect to several important development features for which the variances were allowed. And that includes, of course, the square footage, the building height, the location size and number of parking spaces, and the need for loading bars. Go ahead, I'm sorry. They were already approved as to the existing development, but we have no information and there was no evidence in the record, no evidence before the ZPA Commission as to what those development details would be like for the future development that was approved. But they would have to be mapped out. They would have to be planned out. Although this is part of what they're calling a PUD, they would still, Granger or whoever was in control of the property at the time, would still have to go through that process. To amend the PUD that was approved for the existing development, yes. They would have to go through the process, which would mean a hearing on whatever future development plans they had in mind for the property. So I don't know if you were the attorney at the previous two ZPA hearings. I know there is reference to the fact that Mr. Lease or at least one of the Leases were there and an attorney was with them. That was me, Your Honor. Okay. And in fact, there was an opportunity to question and to maybe not present additional evidence, but to question the evidence that was being presented, correct? There was no evidence presented as to the future development of the property. No, that's true. But as to the existing entity as it came in. Well, the existing entity and the zoning approvals for the existing entity were not objected to. That included the planned unit development permit, the special use permit, the rezoning to the Office of the Child District, and the variances that we've spoken about. So all of those zoning approvals related to the existing development and all of the evidence before the ZPA commission related to the existing development to which there is no objection. The due process violation has to do with the exception clause, which takes away the right to challenge these critical development features that create the impact to the plaintiff's property when that future hearing does occur. The due process violation is located precisely in the Section 3B exception. That says the development features for which the variances were allowed are not required to meet the zoning code standards when that future hearing takes place. So there was no hearing as to the development features that are laid out in the variances at the hearings that took place in 2019 as to the future development. And when that new hearing comes somewhere down the road, if there is one, they will not be debatable. They will not be contestable. Those development features will already have the variances approved for them. Were those development features in the settlement agreement? No. The settlement agreement said absolutely nothing about any height. It was a height restriction that was not contained within the zoning for the property when the county adopted Resolution 2934 in July 1994. Let me ask you this. Hypothetically, let's say Ordinance 839 was never sought and Granger submitted plans to construct a building 85 feet in height. And no matter what, the village objected. What would prevent Granger from arguing that the settlement agreement applied to the village as a successor in interest of Lake County? Well, whether the settlement applies to the village... Would it be binding on the village? I think that the village and Granger, with respect to the settlement stipulation and anything that pertained to the height limitation, was a binding contract. It was an agreement, a settlement contract, to end litigation between private litigants. It is not zoning. Zoning entitlements are not created by agreeing to them. And that is the gist of our case. Because I think the court has to answer that question, is there an entitlement that was established by the settlement stipulation? And the answer to that question is clearly there isn't. Why? It's a limitation only. You cite Cedarburg, City of Rockford. Right. I know our review is in Oval, but tell me where the trial court's analysis in distinguishing that case is wrong. Well, the... In that case, it was kind of a site secret agreement, right? Well, it was a covenant... Off the books. It was a covenant that was given by the property owner to induce the zoning, right? And the court said... And there was no hearing, no notice. Correct. Right. It was a collateral agreement. Now, we're not challenging the settlement stipulation that was made in 1994 or 1996. And it is what it is. What we're saying is that the trial court relied entirely on that settlement stipulation to go from limitation to zoning entitlement. That transformation is unsupported by the documents that are in the record. We have the resolution itself, which says absolutely nothing about what height is permissible for these buildings going forward. It's simply rezoning the property to the urban classification, the urban district, where office uses are permitted generally. There was no special use permit, no variances, no claimed unit development approval in connection with that. There was not even any site plan or renderings showing the particular buildings. It was just a blanket rezoning for whatever uses the zoning code permits. Then Granger, subsequently, in an effort to settle the lawsuit and in the position of dictating terms to the village, said we will agree to these covenants as an additional inducement for the rezoning, limiting the square footage, limiting height, agreeing to screen the property, and so forth. Those conditions are Section 3 of Resolution 2934, and they were also recorded separately as covenants. Those are the two documents that were the zoning for the property and the covenants that were agreed to. It was the settlement stipulation that came a year later that added the height restriction or limitation for the first time. It doesn't say it has to be 90 feet. It says it cannot exceed 90 feet. That's right. It's a limitation, isn't it? It doesn't say you're entitled to 90 feet. It doesn't create a zoning entitlement to 90 feet. It says we, Granger, are unilaterally and voluntarily imposing this restriction on ourselves. We will limit the height of these buildings to 90 feet. That is not equivalent to a zoning entitlement. It was never before the county, the county never passed a zoning resolution or modified in any respect whatever height restrictions were laid out in its duly enacted general zoning ordinance, the Lake County Zoning Ordinance. Mr. Carr, as I read through the briefs and read through the record, well, the briefs in particular, it sounded like and today you have further sounded like you are challenging this ordinance and that time has passed. Which ordinance are you referring to? 839. As opposed to just alleging this potential problem if there is any new property added. We can't do anything with Ordinance 839. I believe, Your Honor, the court can declare it unconstitutional. Why? Because of Section 3B, which takes away our hearing rights for further development, which it approves. When was this ordinance adopted? The ordinance was adopted in June of 2019. Okay. The lawsuit was filed 80 some days later. Okay. Which is timely under Section 1113.25. The statute that was enacted after the court's decision in Claren to provide for a de novo judicial review of any action challenging a special use, a planned unit development, variances, rezoning, anything having to do with zoning. When they have happened, none of these things have happened yet. Oh, yes, it has happened. Something else? Well, there's, what, a new docks? There were some docks that came up? The loading docks are one of the variances that were granted under the ordinance. It has happened, Your Honor, because the ordinance was adopted in 2019. We have 90 days to challenge that ordinance. We challenge specifically the Section 3B exception. That is where the, may I continue? Yes. That is where the due process violation occurred. Because that clause takes away the unchallenged right to a public zoning hearing when that future hearing takes place on a critical development feature for which there was absolutely no evidence before the ZPA commission regarding. No, because they don't have any plans. Don't we have to have some plans that need to be evaluated to determine if, number one, they're even in compliance, and number two, if, and reading, oop, I just lost 3B when I looked for something else. It mentions that in compliance with all of the other rules, regulations, except, now, except these issues that you're identifying, if those other rules and regulations change, as sometimes zoning ordinance do, this would still have to be considered. Even, I think, the exceptions would have to be reconsidered. There's no question that there has to be a hearing to amend the PUD. But the problem is we have 90 days to challenge the ordinance for what it takes away, and it took away a right. When it was, the moment that it was adopted in June 2019, it took away that right to contest the very development features that must be evaluated to determine whether a variance is allowed. You know, this is not a little 10% change in building height. This is 100% increase. It goes from 45, which is what the Granger property is limited to today under the Village Zoning Code. It grants a variation or a variance to allow them to go to 90 feet, which is double that. That has to be done. That is a zoning change for future development that has to be done when the ordinance is adopted. There must be a hearing prior to the deprivation under the due process standards, the interstate case that we cited. And what this ordinance does is it detaches the entitlement from the impact because there wasn't any plan for it. The impact. What is the impact? We don't know. Right. And the CPA Commission had no basis to know either, right? Isn't that one of the self, I mean, the self-factors that we should consider? The self-factors are. There's no evidence of the impact yet. The self-factors have to do with as-applied challenges. This is a zoning challenge that contests a flaw that is inherent in the text of this statute, and you can find it in Section 3B. That exception, if you took away that exception, we would not be here today. We would not have a case. We would have no basis to challenge it because we will have the opportunity at a future hearing to contest that. Right now, if the building that comes down the road meets setbacks, no matter how tall it is, and it can be right up to the property line. The village says maybe 50 feet is the minimum. It's a PUD. They're not bound by their ordinances. They make a big point about that. They can put the property, a new building, right on the property line, as tall as 90 feet. We just don't know. Okay. And that's, okay. And, counsel, you've said that. The time is up, unless my colleagues have additional questions. Justice Kennedy? No, sister. Thank you. You'll have an opportunity for reply. Thank you. Thank you very much. Now is it Mr. Cope? It is. May it please the Court. My name is Ronald Cope. It's an honor to appear before you. Thank you. I represent the Granger interests in this case, and I'd like to make three points. Since time is short, I'm splitting the time. I'm going to make them quickly. But first, there has been no due process denial here, because all the clearance, people like Cheryl Claren, or 11-13-25 required, is the opportunity to appear, to be heard, have notice. And that's exactly, they admit that they were there. In fact, I know they were there because I was there. I saw them. They had an opportunity to challenge everything in Ordinance 839. If they didn't like the 90 foot, they could explain why 90 feet was not so good. They had that opportunity. So the fact that they're concerned about something that may never happen certainly can't be a denial of due process, because there's nothing that requires that an ordinance be passed that, in regard to the height or the setbacks, that it could only be passed based on an application for a new development. In fact, last night I took a look at the Elgin Zoning Ordinance. You may be interested to know that it has a 100 foot limit for the downtown area, and there was no application for building a 100 foot building. And so they've had due process. The other thing that I want to emphasize is this issue of a facial challenge. They say in their complaint that they're making a facial challenge. But what is there on the face of this ordinance that's invalid? Lots of ordinances have height limits or setback limits. Called bulk ordinance. Exactly. They're all contained. You'll find ordinances all over the state. If every ordinance that's passed that has a height limit or a bulk limitation had to have a plan of development before it could be passed, no ordinance would be safe from what they're arguing. Well, their argument is this is applied to a specific property, and Granger has been given specific parameters. Of course. Does that make it unconstitutional? Of course not. It doesn't make it unconstitutional that it happens to be in this case I think 155 acres that's involved. That's a huge area. Downtown Elgin is nowhere near that size. And as was pointed out, there are other restrictions that would come up. In fact, when you first read the complaint in this case, you have to wonder why is it that they're complaining? They're complaining about something that may never happen. Granger may never build anything else. And what they built, they built under the zoning that was granted to them by the county. All they're really asking for, what they asked for, was the same rights that they had in the county. What they're saying, a specific concern, is that all of the codes, ordinances, rules, and regulations of the village that are in effect at the time of some activity that Granger may propose can be heard, except for allowable gross square footage of office space, building height, parking space location, location and loading berths as varied by the village within the ordinance. They're saying that they can't challenge that issue at all if something comes up. Well, obviously that's not correct. First of all, they had the right to challenge it to begin with. That's what those hearings were all about. Should that provision be in there? And so they were there challenging it to start with. They challenged it on the universe of property owned by Granger. They didn't want that on the whole 155 acres. And they had an opportunity to say it. But just as your honors must, of course, realize, if and when Granger ever decided to build something, they've got to go through the application process. And in the record, you'll see that the ordinances of the village require that whatever is built cannot be harmful to the health, safety, and welfare of the surrounding properties. So they can't build anything, even if they have a right to 90 feet, that's going to injure Mr. Lease. Mr. Lease would show up and say, wait a minute, this building is going to be right on top of my property. It's going to cause X, Y, and Z harm to me. But right now, that's just speculation. But the fact is, they have a right to do that. There's nothing here that prevents them from doing it. So they'd have, in effect, two bites at the apple. The first bite is that under due process, they had a chance to argue that what we're putting in this ordinance is invalid, that you shouldn't do it. 90 feet shouldn't apply here, et cetera, et cetera. So they argued it. And then if and when Granger ever decides, or whoever the successor owner might be, to build something else, they can show up and say, wait a minute, this plan puts this too close to my property. Or this plan is invading some environmental issue or creating an environmental issue. So they'd have two, in effect, two chances. And as I said before, what really bothers you is that they claim that they're making a facial challenge. Well, as the court is aware, I'll cite this case, the Napleton case, 229 Illinois 2nd, 296. The burden is on the plaintiff in a facial challenge to show that the ordinance on its face is irrational, that there's no reasonable basis. Well, we know that the ordinance primarily deals with what had already been built under the county. It was following the county zoning and the rights that Granger already had in the county. And that's what was being carried over to here. Well, it's pretty clear, though, that it's fairly clear that the leases are not happy with the existing building and the existing lighting and some of the things, because they feel it does change the atmosphere of their property and the use that they're putting their property to. So they're walking in the door with that. But they walked in about 15 or 20 years after those things happened? Exactly. In fact, they had lawyers examine what was already on the books. And the fact is that the building was already built when they bought their property. So for them to be unhappy with what's there or to base this case on what they feel is already there, and your Honor may be exactly right, makes no sense. They bought it knowing what was there. I'd just like to make one other quick point, and that is there is an agreement, the annexation agreement, which was never challenged. They never challenged the annexation agreement. And there's a one-year statute of limitations in regard to that issue. And the case of Langendorf v. City of Urbana, 197 Illinois 2nd, 100, specifically says that that's an indirect challenge. If you're challenging the zoning in the annexation agreement, that's an indirect challenge to the annexation. And you can't do that. So just in terms of agreements, I'd like to point out that that clearly would, as Your Honor, Judge Hutchinson had pointed out, the time for filing. But here they never challenged it. To this day, they haven't challenged it. And the whole idea behind an annexation agreement is to give certainty to the people coming in. You can be sure Granger would never have come in to Medawar if it didn't have the rights that it already had in the county. And that was part of what the annexation agreement was all about. So Langendorf would apply. As far as the facial challenge, there's nothing on the face of this ordinance which would be invalid. There's a case called Easel v. City of Chicago, which I cite as 651 Fed 3rd, 684, where the City of Chicago had passed an ordinance which called for gun training at firing ranges. But at the same time, it said you're prohibited from having any firing ranges. So the Seventh Circuit had no trouble saying that that's invalid. Here, there's nothing on the face of the ordinance that would call your attention to something that's invalid. What they're talking about is look at what happened in the plan commission or look at what the history is and try and figure out something that was wrong. That's not what a facial challenge is about. Thank you for your time. As I said, it was an honor to appear before you. I greatly appreciate it. Thank you. Thank you. Then Mr. Jablecki. Thank you, Your Honors. May it please the Court. My name is Howard Jablecki. I represent, along with James Rhodes, the Village of Mattawa in this action. As Mr. Cope has stated and as Your Honors have already recognized, this is a case about procedural due process. Despite appellants' contentions and arguments about all the things that he tries to distract the Court with, it is simply about that fact. The question that the Court must consider is whether the Village afforded or protected procedural due process interest when it passed Ordinance 839. Judge Christensen properly found that they did, and this Court should affirm. Before getting into the specific details, a lot of which Mr. Cope touched upon, I think it's important to look at, again, what's before Your Honors. It's the challenge of a facial challenge to the constitutionality of an ordinance. And under that standard of review, this Court is bound to presume that an ordinance is constitutional. As the Mapleton Court specifically stated, an ordinance should be upheld if it bears a rational relationship to a legitimate legislative purpose, and the Court has a duty to uphold the constitutionality of an ordinance when reasonably possible. The variations, as identified in Sections 4, 5, 6, 7, and might be beyond that, were all discussed at the time this ordinance was passed, correct? Correct, Your Honor. And there was an opportunity to comment on them by the public. Was there an opportunity to present evidence by the public other than their general we don't like it or we like it type questions? Absolutely. During the public hearings where this was all considered, the appellant and any other member of the public had an opportunity. They had notice of it. They had an opportunity to be heard. They had an opportunity to present evidence. In fact, they did. They presented testimony and evidence regarding their concerns in the project, and that was all afforded to them in accordance with the requirements of procedural due process. There's no dispute about any of that. In fact, counsel stated today they have no issue with what was there. They take issue with the variances that were granted for the building height specifically. Again, conditions that were existing, entitlements that were existing at the time that the property was annexed into the village. So again, importantly, counsel for appellants went through a litany of items that they think could affect their property, but this is not an as-applied challenge. This is a facial challenge to an ordinance. So we're not looking at the impact on a particular property. We're looking at was there a notice? Was there an opportunity to be heard? Was there an opportunity to cross-examine witnesses? And that is uncontroverted in the record that anybody had the right to do so. But if, in fact, Granger does present some sort of amendment to the PUD and consistent with 839, even though these exceptions appear to have been granted because that's exactly what the language of the section say, if those exceptions fell or were disputed specific to a property because of distance or height or damage to the property, that would have to be considered, correct? That would be considered for any future hearing before the village planning zoning commission or the village board. They would have to come back before. As an outlander in reefs, they'd have to seek an amendment. They'd have to act in accordance with the standards to process that amendment and meet the standards before that could be granted. And that includes things like the placement of the buildings on the property and all of the impacts that might entail. Importantly, there are other restrictions on development that exist already that were incorporated into the ordinance and were in the settlement stipulation and the existing covenants. And those, importantly, prohibit a building from being visible at ground level from an adjacent property line. So there are covenants. There's covenants in place that already protect those interests. Notwithstanding those, they still have to come back, go through the PUD amendment process, and meet all of the standards that would be required under the village code and under the applicable factors to meet approval of such an amendment. I know there's a map in here, but where in particular, again, we're talking about as applied, which is not the relevant part here, but where in particular are those wetlands and that forestry area that's been designated as it relates to the leased property? You can see what's attached in the appendix to our brief is an overview map that shows the location of the leased property with relation to the developments on the Granger property. And importantly, again, your honor, there are restrictions that prohibit the total amount of square footers that can be developed on the property and conditions that require that buildings must be screened from view of the property line of adjacent properties. So, again, I know we're not on an as applied challenge here, and this really shouldn't bear on any decision in this case, but there are protections that exist and will be considered when any future development comes forward. So, looking at the ordinance itself, appellant takes issue with the language in section 3D that incorporates the variations that have been granted. Importantly, those variations were granted in separate sections of the ordinance, and they were granted after a public hearing with notice, an opportunity to be heard, and an opportunity to cross-examine witnesses, all of which is solely what's required by procedural due process. Now, remember, the property that we're dealing with, it's 155 acres. It was developed before the appellants bought the property. It was developed as a conservation development with vast open space and these existing covenants and restrictions as to the development of the property. It's been used and maintained as a conservation development for years. There's tree preservation areas, buffer zones, and again, all buildings have to be screened from the property line. Those are existing conditions that cannot be changed. They're incorporated into the ordinance, and they are covenants and restrictions that run with the land. Are these additional areas available and open to the public, or are they just preservation lands? They're preservation lands on the property, on the Granger property. So, back to the initial question, was the ordinance rational and reasonable? And the appellants presented no evidence, nothing in the record, to establish that there was anything unreasonable on the face of the ordinance. Again, they tried to keep conflating the issue with an as-applied challenge, but they voluntarily dismissed their as-applied challenge. Account to the complaint was an as-applied challenge that they voluntarily dismissed and did not refile within the one-year period. So that is not before the court, and it was not before the lower court at the time summary judgment was entered. So, again, we're stuck with a facial challenge. Let me finish. And all that requires is a notice, opportunity to be heard, and that's exactly what the village afforded. If you have any other questions, I appreciate your time. Justice Blakett? Justice Kennedy? No. Thank you very much. Thank you. All right. Mr. Carr, you may proceed to respond if you choose. Let me begin with the last point, that the ordinance is rational or reasonable. If there is a due process violation, ipso facto, it cannot be reasonable. That's the Glenn Allen case. We cited it in our brief. If we are denied the right to a hearing on future development, as we are under Exception 3B, this ordinance is arbitrary, and it must be declared void. Any holding case makes clear whether it's not a proper hearing, the ordinance is void, ab initio. That's the situation here. It's not rational. Two counsel conflicting points of view. One says we're complaining about the existing development. Mr. Jabloki just said we are complaining only about the future development. It's incompatible. Those positions are inconsistent. We are not complaining. We, excuse me, the plaintiffs, take no issue with the zoning that was approved for the existing development. It was there when the plaintiffs bought the property. They do contest the approvals for future development because when a future development materializes, there will be no opportunity to contest critical features such as the height, which is contrary to Mr. Cope's suggestion, a zoning right that comes out of thin air. It is not in any of the documents that are before the court. The resolution from the county in 1994 does not establish any zoning rights for building height. Neither do the covenants. Neither do the settlement stipulation, which talks about a limitation only, not a right. Your Honor has correctly read that exception. It clearly takes away the right to contest building height at a future plan. When that plan comes forward, if it meets setback, the height of the building, it could be as tall as 90 feet. We don't know. That element will be uncontested. There will never have been a ‑‑ If you can contest it, it may not survive the contest, but you have an absolute right to contest it as applied to other ordinances, codes, and issues going on within the administration of MEDAR. Your Honor, the variance in section 4 approves the height variance. When a future hearing is held, 90 feet will be the entitlement. It will be uncontestable then. But if someone came forward, and it could be your client, and says that 90 feet does X, Y, Z to my property, there could be a contest. Will it be successful? I don't have a crystal ball, counsel, but it can be contested. Armstrong v. Manzo, the due process resulted from the switching of the burden of proof. When new plans are presented, it will be the applicant's burden to establish the rights to the zoning entitlements that they seek. It would be their burden. This ordinance reverses it because when they come forward in the future, the entitlement will already be established by the ordinance that we are challenging here. And by virtue of the section 3B exception, it will be undebatable. It will be uncontestable. Yes, we can speak up about it, but it's where the burden of proof lies is determinative of the outcome, says the U.S. Supreme Court in Armstrong v. Manzo. Well, Karen raises another point in its decision that was raised in the dissent at the second district case, that there could be change in the leadership at Medawar, or I apologize if I'm not saying it properly, that could change many things, including something possibly in this ordinance. But it won't change the fact that back in 2019, an ordinance was adopted that deprives us in the future of the right to contest these critical features. You need to assess the impact, Judge. You need to know. You might want to look at some cases that have the word WASCO in them. New leadership on the sanitary district changed ordinances that were enacted before. You might want to look at that because it happens all the time. I understand that municipalities change their legislative direction. Yes, they can. But the point is, as the court recognized in Clarence, this is not about outcome. We're not challenging the future development as applied to the property. We're challenging the process. There has to be a fair process that drives the truth of it. Your Honor relied on the Matthews v. Eldridge case, which talks about time, place, and circumstance, as a critical element. It isn't a notice-and-hearing rubric that's applied. May I continue? Finish your thought. It isn't an automatic formula. You know, due process is not a rigid conception, right? It's a flexible concept. And the question is, what does the circumstances of this particular case require? In Clarence, the building was already under construction, wasn't it, when the hearing was held? They started grading. Everybody knew what the plan was. It was a liar story. They knew what the plan was going to be. It was a lot easier than a foundation. We have no idea. We have no idea what future development may take place. It's totally unrestrained, and it was not presented. There was no hearing on that future development when it was presented to the ZPA Commission. And now we are in the position where it will not be open to debate what the height is, what the size is, what the parking and loading features would be for future development. And incidentally, one final point, Mr. Croak talks about it may never happen. That's the ripeness defense, right? Well, isn't that inconsistent with their contention that there was a hearing back in 2019 where we had all due process afforded to us because of notice and hearing? If it's not right, how could there have been a hearing? It's incompatible. If it's not right, how are we having this hearing? But with that, Justice Burkett? Thank you. Thank you. And Justice Kennedy? No, thank you. Thank you. Thank you, counsel, for your arguments. We will take the matter under advisement and get a decision out in due course. We'll stand in recess pending another hearing.